IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TIPPLE ENTERPRISE, LLC, a West
Virginia limited liability company,

        Plaintiff/
        Counter-Defendant,

v.                  //    CIVIL ACTION NO. 1:13CV146
                            (Judge Keeley)

KINGSFORD MANUFACTURING COMPANY,
a foreign corporation,

        Defendant/
        Counter-Claimant.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 46, 48]

Pending before the Court are two motions for summary judgment filed by the defendant, Kingsford Manufacturing Company ("Kingsford"). In its first motion (dkt. no. 46), Kingsford seeks summary judgment on the claims of the plaintiff, Tipple Enterprise, LLC ("Tipple"), for breach of contract and punitive damages. Its second motion (dkt. no. 48) seeks summary judgment on Kingsford's counterclaim for conversion. For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Kingsford's motions.

## I. FACTUAL BACKGROUND

After Tipple filed this action against Kingsford, alleging that Kingsford had failed to meet its contractual obligations under the Wood Waste Agreement (the "Agreement") the parties signed on December 3, 2010, Kingsford counterclaimed, alleging that Tipple had breached the Agreement, and also owed Kingsford a substantial

TIPPLE ENTERPRISE, LLC v. KINGSFORD MANUFACTURING CO.   1:13CV146

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 46, 48]

refund for overpayments Kingsford mistakenly made for deliveries of wood waste.

## A.   The Agreement

Under the Agreement, Tipple, which is a three-member, limited liability company headquartered in Philippi, West Virginia, was obligated to supply wood waste to Kingsford, a charcoal manufacturer with a plant located in Parsons, West Virginia.[1]  The Agreement in pertinent part provided as follows:

> 1.  **PURCHASE OF WOOD WASTE**: During the Initial Term (as defined in Section 3 below), [Tipple] will sell and [Kingsford] will purchase at least Twenty-four Thousand (24,000) "As Received Tons" . . . per year of Wood Waste . . . .  Minimum quantities to be purchased by [Kingsford] during any Renewal Term . . . may vary and will be determined prior to the start of any Renewal Period.
>
> . . .
>
> 3.  **TERM**: The initial term of this Agreement shall commence on [December 3, 2010] and shall continue for a period of one [] (1) year thereafter (the "**Initial Term**"), subject to earlier termination pursuant to the provisions of this Agreement.  Seller will deliver a minimum of 15,000 ton [sic] the first six (6) months of this [A]greement.  Unless either Party elects to terminate this Agreement by written notice to the other Party at least sixty (60) days prior to the Initial Term,

---

[1] Kingsford is a Delaware corporation with its principal place of business in California.  Each of Tipple's three members is a West Virginia citizen.

TIPPLE ENTERPRISE, LLC v. KINGSFORD MANUFACTURING CO.   1:13CV146

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 46, 48]

this Agreement will renew for an additional one (1) year
term (the "**Renewal Term**"). . . .

4.   **PRICE AND PAYMENT**:

   **A.** The initial price to be paid for delivery of Wood
Waste will be $34.00 per "As Received Ton" . . . , f.o.b.
[Kingsford's] site . . . .

   **B.** An "**As Received Ton**" of Wood Waste will consist of
2,000 pounds of material meeting the specifications set
forth in Section 7 [defining the composition of wood
waste]. If any delivered material contains more than 45%
moisture, [Kingsford] will be entitled to reduce the
payment weight of the load to approximate the weight that
would have been received if the material had contained
only 45% moisture. . . .

   . . .

8.   **TERMINATION**: Either Party may terminate this
Agreement immediately if: (a) the other Party is in
breach and does not cure such breach within twenty (20)
days following notice from the non-breaching Party; or
(b) voluntary or involuntary bankruptcy proceedings are
initiated with respect to the other Party. Such rights
of termination will be in addition to the Parties' other
legal rights and recourses, whether or not set forth in
this Agreement.

   . . .

18.  **GOVERNING LAW**: This Agreement will be governed by
and construed in accordance with the laws of the State of
Georgia. A waiver of any breach of the term and
conditions of this Agreement will not be deemed a waiver
of any preceding or subsequent breach of the same or any
other terms or conditions.

(Dkt. No. 3-1 at 1-5) (emphasis in original).

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 46, 48]**

## B.    Factual Allegations

The dispute in this case centers on the amount of wood waste actually delivered by Tipple, the dates of those deliveries, and the payments Kingsford made for each delivery.    Attached to Kingsford's summary judgment motion was a chart titled "Tipple Payments" (dkt. no. 47-2) created by Kingsford "to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court," pursuant to Fed. R. Evid. 1006.    (Dkt. No. 47 at 7 n.5).    The chart is attached to this Memorandum Opinion and Order as Exhibit A.

While Tipple agrees that portions of the chart are accurate, it disputes other portions.    For example, Tipple agrees with the chart's representation that "in the time period of December 3, 2010 through December 3, 2011 [Kingsford] accepted 18,006.55 tons" of wood waste; however, it contends that Kingsford accepted only 2935.85 tons during the Renewal Term, while the chart indicates that Kingsford accepted 3455.42 tons.    (Dkt. Nos. 47-6 at 8; 47-2 at 4).    Moreover, as to the chart's tonnage entries between February 17, 2012 and April 19, 2012, Tipple "does not believe that the 'wet tons' is [sic] accurately calculated."    (Dkt. No. 47-7 at 3).

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 46, 48]**

Regarding the amount of wood waste delivered during the first six months of the Initial Term, Kingsford contends that Tipple delivered only 12,480.15 tons, thereby failing to meet its contractual obligation to deliver 15,000 tons within that time period. (Dkt. No. 47 at 2). Tipple does not dispute that it delivered only 12,480.15 tons, but states that it "delivered all of the wood waste it was permitted to deliver" by Kingsford during the first six months. (Dkt. No. 49-5 at 2).

Tipple also agrees that it only delivered 18,006.55 tons of wood waste during the Initial Term, but claims Kingsford's representative, Thomas J. Bonner ("Bonner"), "advised [Tipple] at various times that wood waste products would not be accepted despite the express language of the [Agreement]." (Dkt. No. 50 at 4). Indeed, affidavits from two of Tipple's members support this contention. (Dkt. No. 50 at 11-17). Furthermore, Tipple responded to an interrogatory from Kingsford as follows:

> Presently, [Tipple] recalls in approximately mid 2011 having one or more discussions with Mr. Bonner as a representative of [Kingsford] regarding the status of wood waste delivery. At that time Mr. Bonner advised [Tipple] that no further wood waste product was necessary as [Kingsford] had a more than sufficient supply.
>
> Additionally, representatives of [Tipple] recall that in March of 2012 [Tipple] was advised to not deliver any wood waste products until further informed. Representatives of [Tipple] recall that on or about

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 46, 48]**

> October, 2012 [Tipple] was told to resume sending wood waste products to [Kingsford].

(Dkt. No. 47-6 at 5).  Kingsford flatly denies that "it ever demanded that Tipple cease delivering wood waste product to its facility." As it points out, its chart establishes that Tipple continued to deliver wood waste through November 2011.  (Dkt. No. 47 at 4 n.2).

While the parties agree that they communicated about Tipple's deliveries of wood waste in March 2012, the subject matter of their conversation is very much in dispute. According to Kingsford, March, 2012 is when it notified Tipple it was in breach of the Agreement. (Dkt. No. 47-4 at 2). Tipple, however, recalls the conversation as a directive from Kingsford "to discontinue all deliveries of wood waste."[2]  (Dkt. No. 47-3 at 2).

The parties also dispute when their next communication occurred and what was said.  Kingsford contends that, in January 2013, it "orally advised Tipple that it had inadvertently overpaid Tipple by a total of $128,772 for the amount of wood waste provided during the Initial and Renewal terms of the Agreement and requested reimbursement."  (Dkt. No. 47 at 3).  Tipple's affiants, however,

---

[2] According to Kingsford's chart, however, Tipple made deliveries of wood waste in April 2012 and January 2013.  (Dkt. No. 47-2 at 4, 5).

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 46, 48]**

recall that they "had no information or knowledge that [Kingsford] allegedly paid $40.00 per as received ton as opposed to $34.00 per as received ton." (Dkt. No. 50 at 13, 17).

In its requests for admissions, Kingsford asked Tipple to admit that "in January, 2013, Kingsford requested that Tipple reimburse Kingsford for overpayments." (Dkt. No. 49-5 at 3). Tipple denied this request, explaining that "[Tipple] does not recall any such request [for reimbursement]." Id. Nevertheless, Tipple no longer disputes that it was overpaid by Kingsford; in response to Kingsford's interrogatories, it admitted that "it appears that [Tipple] was paid forty dollars ($40.00) per ton for deliveries made, however, [Tipple] is unable to determine when this price was paid and for what deliveries." (Dkt. No. 49-5 at 3).

On February 1, 2013, Tipple's attorney officially notified Kingsford in writing that Tipple considered Kingsford to be in breach of the Agreement based on the March 2012 conversation in which Bonner allegedly told Tipple to stop delivering wood waste. (Dkt. No. 47-3 at 2). In its notice, Tipple demanded payment for 21,064.15 tons of wood waste that Kingsford allegedly refused to purchase. Id.

On February 15, 2013, Kingsford responded to Tipple's notice of breach with a letter asserting its belief that Tipple had

TIPPLE ENTERPRISE, LLC v. KINGSFORD MANUFACTURING CO.   1:13CV146

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 46, 48]**

breached the Agreement "by not meeting its delivery obligations during the Initial Term" and demanding damages. (Dkt. No. 47-4 at 2-3). Kingsford also demanded reimbursement for the tonnage overpayment. Id. at 3.

## II. PROCEDURAL BACKGROUND

Tipple sued Kingsford and its employee, Bonner, in the Circuit Court of Harrison County, West Virginia, alleging breach of contract against Kingsford, tortious interference against Bonner, and punitive damages. Kingsford removed the complaint and filed a counterclaim for conversion of the overpayment and for breach of contract. Bonner filed a motion to dismiss, which the Court granted, leaving Tipple's claims for breach of contract and punitive damages against Kingsford, and Kingsford's claims for conversion and breach of contract against Tipple.

Although he is no longer a party, Bonner remains a critical witness in this case. (Dkt. No. 43 at 2)("Bonner is an important witness not only for [Kingsford], but also for [Tipple]."). Unfortunately, during the pendency of this litigation, he has been on extended medical leave and unavailable for deposition. Nevertheless, Kingsford recently represented to Tipple that Bonner

TIPPLE ENTERPRISE, LLC v. KINGSFORD MANUFACTURING CO.    1:13CV146

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 46, 48]

will be retiring "some time in the immediate future," and that "he would be provided for deposition upon his retirement." Id.

Despite Bonner's continuing unavailability, Kingsford moved for summary judgment on August 1, 2014.  With respect to Tipple's claims, it argues that Tipple "cannot satisfy its burden with respect to proving that the behavior of Kingsford resulted in the alleged harm and damage suffered." (Dkt. No. 47 at 1).  Kingsford further argues that any agreement governing the Renewal Term violated the statute of frauds and was therefore unenforceable. Alternatively, it argues that Kingsford could not have violated any agreement during the Renewal Term because such agreement did not include a minimum purchase requirement.  Id. at 12-15.  Finally, Kingsford argues that "the parties are in agreement as to the overpayment and the amount of the overpayment." (Dkt. No. 49 at 6).

In response, Tipple alleges that it was "ready, willing and able" to meet its obligations under the Agreement, but that Kingsford "did not purchase," or "refused to purchase," the minimum amount. (Dkt. No. 50 at 2-3). Tipple also reiterates its allegation that Bonner "advised [Tipple] that no significant quantities of wood waste would be accepted." Id. at 4.  Furthermore, with respect to Kingsford's conversion claim, Tipple asserts that it "was not

TIPPLE ENTERPRISE, LLC v. KINGSFORD MANUFACTURING CO.   1:13CV146

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 46, 48]

provided with any documentation regarding the price paid [per ton],

therefore, [Tipple] had no way to ascertain the amount paid." <u>Id.</u>

at 5.

Based on Bonner's unavailability, Tipple relies on Fed. R.

Civ. P. 56(d) to emphasize the inappropriateness of summary

judgment at this juncture. Fed. R. Civ. P. 56(d) provides as

follows:

> **(d) When Facts Are Unavailable to the Nonmovant**. If a
> nonmovant shows by affidavit or declaration that, for
> specified reasons, it cannot present facts essential to
> justify its opposition, the court may:
>
> **(1)** defer considering the motion or deny it;
>
> **(2)** allow time to obtain affidavits or declarations or to
> take discovery; or
>
> **(3)** issue any other appropriate order.

Because Bonner remains unavailable for deposition, Tipple

argues that the Court should exercise its discretion and defer any

ruling on Kingsford's dispositive motions.  (Dkt. No. 50 at 7).

Alternatively, it contends that there are genuine issues of

material fact in dispute regarding certain conversations that

occurred after the parties entered into their Agreement.[3]

---

[3] Under the parol evidence rule, terms of a written agreement "may
not be contradicted by evidence of any <u>prior</u> agreement or of a
<u>contemporaneous</u> oral agreement."  W. Va. Code § 46-2-202 (emphasis
added).  Because Tipple's alleged conversations with Bonner occurred

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 46, 48]**

In reply, Kingsford argues that the Court should not credit Tipple's affidavits.[4] It further argues that any alleged agreement covering the Renewal Term is unenforceable under West Virginia's statute of frauds. Finally, it contends that Tipple has implicitly acquiesced to several of its arguments by failing to respond to them.[5]

### III. STANDARD OF REVIEW

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory

---

during the term of the Agreement, rather than before or contemporaneously, evidence of those conversations would not be precluded. <u>See</u> <u>Mountaineer Contractors, Inc. v. Mountain State Mack, Inc.</u>, 268 S.E.2d 886, 892 (W. Va. 1980) (permitting evidence of oral representations because they were made <u>after</u> the original contract negotiations had ended).

[4] Under the "sham affidavit" rule, "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." <u>Cleveland v. Policy Mgmt. Sys. Corp.</u>, 526 U.S. 795, 806 (1999). The rule does not apply here because Kingsford has not pointed to any contradiction between Tipple's affidavits and its previous sworn statements.

[5] During oral argument on Kingsford's motions, counsel for Tipple withdrew his client's claims for reliance and punitive damages. <u>See</u> <u>Hayseeds, Inc. v. State Farm Fire & Cas.</u>, 352 S.E.2d 73, 80 (W. Va. 1986) ("Generally, punitive damages are unavailable in an action for breach of contract unless the conduct of the defendant constitutes an independent, intentional tort.").

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 46, 48]**

answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a), (c)(1)(A).  When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party.  <u>Providence Square Assocs., L.L.C. v. G.D.F., Inc.</u>, 211 F.3d 846, 850 (4th Cir. 2000).  The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once the moving party has made the necessary showing, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party.  <u>Id.</u> at 248–52.

TIPPLE ENTERPRISE, LLC v. KINGSFORD MANUFACTURING CO.   1:13CV146

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 46, 48]**

## IV. DISCUSSION

The parties hotly dispute facts that impact two important questions in the case. First, did Kingsford overpay Tipple for each delivery, and, if so, by how much? Second, did Bonner, Kingsford's agent, direct Tipple to stop making deliveries of wood waste? Based on these material factual disputes, summary judgment on all issues clearly is inappropriate.   Nevertheless, several legal issues raised by Kingsford's motions, including (I) the state substantive law to be applied, (ii) whether a valid, enforceable contract existed during the Renewal Term, and (iii) the parties' obligations under the Agreement, are ripe for review.

**A.  Governing Law**

In resolving the legal issues surrounding the parties' contractual dispute, the Court must first determine which state's substantive law applies.  Paragraph 18 of the Agreement contains a "governing law" provision that designates the law of Georgia as the applicable law.  In determining whether to enforce that provision, or to apply some other state's law, the Court looks first to West Virginia's conflict of laws rules.  See <u>Albemarle Corp. v.</u>

TIPPLE ENTERPRISE, LLC v. KINGSFORD MANUFACTURING CO.   1:13CV146

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 46, 48]**

AstraZeneca UK Ltd., 628 F.3d 643, 652-53 (4th Cir. 2010).

Generally, as to the enforceability of "governing law" provisions, the West Virginia Supreme Court of Appeals has held that

> [a] choice of law provision in a contract will not be given effect when the contract bears no substantial relationship with the jurisdiction whose laws the parties have chosen to govern the agreement, or when the application of that law would offend the public policy of this state.

Syl. Pt. 1, Gen. Elec. Co. v. Keyser, 275 S.E.2d 289, 290 (W. Va. 1981). Here, no one argues that the public policy of West Virginia would be violated by the application of Georgia law. Nevertheless, neither the Agreement nor the parties bear any relationship, let alone a "substantial" relationship, to Georgia. Therefore, under West Virginia's conflict of laws rule regarding governing law provisions, the parties' choice of Georgia's contract law will not be given effect. See id.

The question remains as to what state's law should govern the Court's interpretation of the Agreement if Georgia law does not apply. It is clear that, "[u]nder the law of West Virginia . . . the law of the state in which the contract is executed and to be performed governs adjudication of claims arising out of that agreement." Nat'l Union Fire Ins. Co. v. Lambert, 462 Fed. App'x

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 46, 48]**

299, 302 n.1 (4th Cir. 2012) (citing <u>Howe v. Howe</u>, 625 S.E.2d 716, 721 (2005)).  Here, the parties' Agreement was executed and performed entirely within West Virginia.  Therefore, the Court will apply the substantive law of West Virginia.

**B.   Renewal**

Neither party terminated the Agreement by written notice in accord with Paragraph 3 during the Initial Term.  Thus, the Court must determined whether, by operation of Paragraph 3, the parties' failure to terminate gave rise to a new agreement governing their rights and obligations for the Renewal Term.

Paragraph 3 provides that, "[u]nless either Party elects to terminate this Agreement by written notice to the other Party at least sixty (60) days prior to the Initial Term, this Agreement will renew for an additional one (1) year term (the "**Renewal Term**"). (Dkt. No. 47-1 at 2) (emphasis in original).  Importantly, Paragraph 1 provides that "[m]inimum quantities to be purchased by [Kingsford] during any Renewal Term (as defined in Section 3 below) may vary and <u>will be determined</u> prior to the start of any Renewal Period." <u>Id.</u> (emphasis added).

The parties concede that they never agreed on a "minimum quantities" term for the Renewal Term, as required by Paragraph 1.  Nevertheless, Tipple contends that a valid contract existed as to

15

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 46, 48]**

the Renewal Term, and that its terms were identical to those governing the parties' rights and obligations during the Initial Term.  Kingsford first argues that, under West Virginia's statute of frauds, no enforceable contract for the Renewal Term existed; however, it also contends that the $34/ton price term from the Initial Term applied to any deliveries made by Tipple during and after the Renewal Term.

## 1. Validity

Initially, the Court must determine whether to construe the Agreement as one contract covering two years, or as one contract that covered a single year and provided the option of creating a separate contract for the second year.  If the Agreement contained no conditions for automatic renewal, the Court might consider it a single contract governing both the Initial and Renewal Terms.  But see Safeco Ins. Co. v. Hamm, 718 F. Supp. 744, 746 (E.D. Mo. 1989) ("With automatic renewals of insurance policies, each renewal is a new contract.  Renewal of the insurance policy constitutes a separate and distinct contract for the period of time covered by the renewal.").  The Agreement's proviso that the minimum purchase requirement "will be determined prior to the start of any Renewal Term," is a strong indicator, however, that the parties' failure to

TIPPLE ENTERPRISE, LLC v. KINGSFORD MANUFACTURING CO.   1:13CV146

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 46, 48]

determine the minimum purchase requirement precluded automatic renewal.

Even if a new contract arose from automatic renewal, however, it was not validly formed.  To determine whether a valid contract for the Renewal Term existed, the Court turns to first principles of contract law.  "The fundamentals of a legal contract are competent parties, legal subject matter, valuable consideration and mutual assent.  There can be no contract if there is one of these essential elements upon which the minds of the parties are not in agreement."  Syl. Pt. 4, <u>State ex rel. AMFM, LLC v. King</u>, 740 S.E.2d 66, 68 (W. Va. 2013) (internal quotation marks and citation omitted).

Here, Tipple concedes that it and Kingsford never agreed on the minimum amount of wood waste Tipple would deliver and Kingsford would purchase during the Renewal Term.  Without mutual assent, no valid contract for the Renewal Term could have been formed.  <u>See</u> David Frisch, 2A <u>Anderson U.C.C.</u> § 2-306:38 (3d ed.) ("[A] contract specifying that the buyer may buy from the seller and that the seller will then sell such a quantity as the buyer chooses is not a requirements contract.  In the absence of a guaranteed minimum purchase, such a contract is illusory and, as a result, cannot be enforced.").

## 2. Statute of Frauds

Even if a valid contract for the Renewal Term had been formed,

Kingsford argues it was unenforceable under West Virginia's statute

of frauds.  If valid, the Renewal Term agreement proposed by Tipple

would be governed by Article 2 of West Virginia's Uniform

Commercial Code ("UCC"), W. Va. Code § 46-2-201, <u>et seq.</u>[6]  The

statute of frauds contained in Article 2 provides:

> Except as otherwise provided in this section a contract
> for the sale of goods for the price of $500 or more is
> not enforceable by way of action or defense <u>unless there
> is some writing sufficient to indicate that a contract
> for sale has been made between the parties</u> and signed by
> the party against whom enforcement is sought or by his
> authorized agent or broker.  A writing is not
> insufficient because it omits or incorrectly states a
> term agreed upon but the contract is not enforceable
> under this paragraph beyond the quantity of goods shown
> in such writing.

§ 46-2-201(1) (emphasis added).

The Renewal Term agreement proposed by Tipple would fall

within the statute of frauds as a contract for the sale of goods

(wood waste) for $500 or more (24,000 tons x $34 = $816,000).

Therefore, a writing would be required under West Virginia law.

---

[6] Article 2 of the UCC applies to "transactions in goods." § 46-2-
102.  "'Goods' means all things (including specially manufactured goods)
which are movable at the time of identification to the contract for
sale." § 46-2-105(1).

Because no writing exists, any Renewal Term agreement is unenforceable.

## C. Parties' Obligations

Depending on the time period involved, Tipple and Kingsford had varying rights and obligations under the Agreement.

### 1. First Six Months

Paragraph 3 of the Agreement provided that "[Tipple] will deliver a minimum of 15,000 ton [sic] the first six (6) months of this agreement." (Dkt. No. 47-1 at 2). Notably, the Agreement provided no corresponding obligation that Kingsford had to purchase 15,000 tons within the first six months. Tipple has offered no evidence to dispute Kingsford's assertion that Tipple delivered only 12,480.15 tons between December 3, 2010 and June 3, 2011. Moreover, according to Tipple's interrogatory response, Bonner did not repudiate the Agreement until "mid 2011," i.e., after the end of the first six-month period. (Dkt. No. 47-6). Therefore, if any breach occurred during the first six months, it resulted from Tipple's failure to meet its minimum delivery requirement.

### 2. Initial Term

Paragraph 1 of the Agreement provided that, "[d]uring the Initial Term (as defined in Section 3 below) , [Tipple] will sell and [Kingsford] will purchase at least Twenty-four Thousand

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 46, 48]**

(24,000) 'As Received Tons' ('**Initial Quantity**') per year of Wood Waste . . . ." (Dkt. No. 47-1 at 2) (emphasis in original). Furthermore, Paragraph 4.A stated that "[t]he initial price to be paid for delivery of Wood Waste will be $34.00 per 'As Received Ton' (as defined below), f.o.b. [Kingsford's] site." <u>Id.</u> Tipple thus was clearly obligated to deliver at least 24,000 tons during the Initial Term, and Kingsford was obligated to purchase at least 24,000 tons at $34.00 per ton during the Initial Term.

Neither party disputes that Tipple delivered only 18,006.55 tons of wood waste during the Initial Term. As to the 5993.45 ton deficit, Kingsford argues that Tipple breached the Agreement by failing to deliver the additional wood waste. Tipple, on the other hand, asserts that Bonner repudiated the Agreement in mid 2011 by directing that "no further wood waste product was necessary as [Kingsford] had a more than sufficient supply."

Bonner, who has yet to be deposed, has neither admitted nor denied directing Tipple to stay delivery of wood waste during the initial term. Thus, at this point, a genuine dispute of material fact exists that precludes summary judgment. Should Bonner deny making such a statement, Tipple's evidence to support Kingsford's repudiation would rest solely on its own interrogatory responses and affidavits, a slim reed indeed. <u>See</u> <u>Rogers v. Cotton</u>, Nos.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 46, 48]**

4:08CV3891, 4:09CV1290, 2012 WL 396194, at *7 (D.S.C. Jan. 18, 2012) ("Plaintiff's own self-serving statements, without more, are insufficient to create a genuine dispute of fact.") (citing <u>Nat'l Enters., Inc. v. Barnes</u>, 201 F.3d 331, 335 (4th Cir. 2000); <u>White v. Boyle</u>, 538 F.2d 1077, 1079 (4th Cir. 1976)). The Court, therefore, will defer its ruling on whether Kingsford is entitled to summary judgment on Tipple's breach of contract claim as to the Initial Term until after Bonner is deposed.

### 3. Renewal Term

Based on the Court's conclusion that any agreement between Tipple and Kingsford concerning the Renewal Term was neither valid nor enforceable, it follows that neither party has any rights or obligations to assert regarding a purported breach during the Renewal Term. Thus, Tipple's allegation that Kingsford breached its contractual obligations during the Renewal Term fails, given that Kingsford had no obligations during that period. Moreover, Kingsford's allegation that it overpaid Tipple for wood waste delivered during the Renewal Term also fails because there was no written contract (aside from any individual purchase orders) governing the price of wood waste during that period.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 46, 48]**

### V. CONCLUSION

## A.   Legal Conclusions

Based on the undisputed evidence before it, the Court concludes as a matter of law that:

1.   Tipple breached the parties' Agreement by failing to deliver 15,000 tons of wood waste during the first six months of the Initial Term;

2.   Kingsford overpaid Tipple during the Initial Term by an amount to be determined; and

3.   No contract existed for the Renewal Term, and the parties had no obligations or rights under the Agreement after December 3, 2011.

## B.   Remaining Issues

Two material factual issues remain in dispute:

1.   Did Bonner repudiate the Agreement in mid-2011?

2.   By how much did Kingsford overpay Tipple for each delivery during the Initial Term?

For these reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Kingsford's motions for summary judgment.  The case should proceed to trial as scheduled.

It is so **ORDERED.**

**TIPPLE ENTERPRISE, LLC v. KINGSFORD MANUFACTURING CO.    1:13CV146**

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 46, 48]**

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: September 30, 2014.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE